```
              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF ARKANSAS
                       FAYETTEVILLE DIVISION
```

**BELINDA HOLLAND**                                                      **PLAINTIFF**

          **v.**          **Civil No. 06-5225**

**KEN BERLEY, DDS, LTD.**                                                **DEFENDANT**

<u>**O R D E R**</u>

Now on this 11th day of January, 2008, comes on for consideration defendant's **Motion For Summary Judgment** (document #17), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

1. In this removed case, plaintiff Belinda Holland ("Holland") alleges that she was hired by defendant Ken Berley, DDS, Ltd. ("Berley") in 1991, and that as part of her employment contract, Berley agreed to deposit an amount equal to 25% of her salary into a retirement plan on her behalf. Holland alleges that she received statements showing how much had been placed into the plan in 1994, 1996, and 1999, but that starting in 1999, and continuing until late 2005, Berley made excuses for not providing her with such statements. In January, 2006, she alleges that she received a statement showing the amount that was in the retirement plan, and that it was short of what it should have been.

Berley removed the case to this Court, contending that the allegations brought it within the purview of the Employee Retirement Income Security Act ("ERISA"). Holland does not dispute the applicability of ERISA to her claim.

2. Berley now moves for summary judgment, contending that the statute of limitations had run on Holland's claim before she filed suit. His legal reasoning is that ERISA has no statute of limitations, and that the most analogous statute of limitations is the Arkansas statute governing claims for breach of oral contract, **A.C.A. §16-56-105(1)**, which is three years. His factual reasoning is that "[b]y Plaintiff's own admission, she was aware or should have been aware of the alleged discrepancy in the funds in her retirement plan as early as 1994, and certainly no later than 1999."

Holland does not dispute that the statute of limitations on her claim is three years, but argues that there is a genuine issue of material fact as to when she became aware that her retirement account was not fully funded, precluding summary judgment.

3. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the

non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, 838 F.2d 268 (8th Cir. 1988).

4.   Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, and from the undenied allegations of the Complaint, the following significant undisputed facts are made to appear:

*   Holland was hired by Berley as a part-time employee in 1991.  As part of her employment package, Berley agreed to place funds into a retirement account on Holland's behalf.  The account would vest in three years.  While Berley does not admit to any specific amount, Holland alleges that the amount to be placed in her retirement account was equivalent to 25% of her salary.

*   Berley maintained two different retirement plans, the Ken Berley, D.D.S. Ltd. Profit Sharing Plan ("Profit Sharing Plan") and the Ken Berley, D.D.S., Ltd. Money Purchase Pension Plan ("Pension Plan").  Holland received a booklet explaining her benefits in these plans, and received statements for her accounts in the plans in 1994, 1996, and 1999.

*   Holland received pay stubs with each wage payment, and annual W-2 forms from Berley, starting in 1991.

5.   Holland filed her Complaint in this matter on October 27, 2006, so the relevant issue is what she knew or should have known about her retirement account before October 27, 2003.  The evidence before the Court on this issue is as follows:

(a)  Holland submitted summary plan descriptions for both the retirement plans.  The Summary Plan Description for the Ken Berley, D.D.S. Ltd. Profit Sharing Plan states that "[y]our account balance will reflect the annual allocations, the period of time you participate in the Plan and the success of the Plan in investing and reinvesting the assets of the trust fund."

The Summary Plan Description for the Ken Berley, D.D.S., Ltd. Money Purchase Pension Plan contains an identical provision regarding account balance.

Under each plan, Berley was both the Plan Administrator, "responsible for providing you and other participants information regarding your rights and benefits under the Plan," and the Trustee, responsible for maintaining trust fund records.

(b)  Holland offers statements from three annual periods for each of the retirement plans.  The combined contributions from the Profit Sharing Plan and the Pension Plan, for the period from 07/01/93 to 06/30/94, come to $1,940[1].  Berley offers pay stubs for that period which show that Holland had total earnings of $10,075.  Twenty-five per cent of this sum would be $2,519.

---

[1] All figures have been rounded off to the next lower dollar amount, because some of the documentation is illegible in the "cents" column.

Statements for the period from 07/01/95 to 06/30/96 reflect combined contributions to the two plans of $2,723. Holland's pay stubs show total earnings for that same period of $12,600. Twenty-five per cent of this sum is $3,151.

Statements for the period from 07/01/98 to 06/30/99 reflect that no contribution was made to the Profit Sharing Plan, and a contribution of $1,573 was made to the Money Purchase Plan. Holland's pay stubs for this period show total earnings of $18,274. Twenty-five per cent of this sum would be $4,569.

(c) Holland also offers an Affidavit, in which she avers that she and Berley agreed that in addition to her salary, "25% of said salary would be placed into a retirement plan on my behalf." She averred that she found the June 30, 1994, balance on her statement "close to what I expected it to be," and that she was not "alarmed" by the amount, and further, that in the 1995-1996 period Berley exceeded the "agreed upon contributions."

In 1999, Holland averred that she received - "directly from the BKD Investment Advisors" - a summary showing an amount "below what I expected it to be," but that she was led to believe that the plan "was now investing its funds when it had not in prior years," and that she "did not believe that those investments were reflected in the employee benefit summary I obtained in 1999. I had no reason to believe otherwise."

Holland further averred that she did not receive benefits

-5-

statements from Berley between 1996 and 2006, although "[t]hroughout my employment with the Defendant I requested information as to the statues [sic] of my retirement plan." She averred that "I was always assured by Ken Berley that the agreed upon contributions were being made to my retirement plan was [sic] investing its funds in a variety of areas."

6.   The foregoing evidence is such as to convince the Court that there is no genuine issue in dispute as to what Holland knew or should have known about her retirement account before October 27, 2003.  While Holland may have found the contributions for 07/01/93 to 06/30/94 and 07/01/95 to 06/30/96 "close" to what was expected, so as not be be "alarmed," she could not have considered the gap between expectation and reality on the 06/30/99 statement to be in that category.  The amount was almost $3,000 less than what Holland would have expected, based on her allegation of a 25% contribution.

The discrepancy on the 06/30/99 statement could not reasonably have been explained by a belief that the money was being invested and thus did not show up on Holland's statements. Such a belief is discredited by the Summary Plan Description statements that "[y]our account balance will reflect the annual allocations . . . and the success of the Plan in investing and reinvesting the assets of the trust fund." Holland's statements did in fact show both contributions and a column reflecting

"Gains/Losses." Either a gain or a loss is shown on each statement.

The Court is also not persuaded that reasonable minds could dispute whether it was reasonable for Holland to have relied upon Berley's oral assurances that contributions were being made to her account after 1999, given the 1999 discrepancy and the absence of any written documentation about the account from that point forward. It was Berley's responsibility to maintain information about the plan and its funds, and to provide such to plan participants. The fact that he ducked requests for financial information by "assuring" Holland that contributions were being made should have alerted Holland to a problem, even without the 1999 discrepancy.

7. The foregoing analysis leads the Court to conclude that Holland's claim for contributions that should have been made to her retirement account, but were not, is time-barred for contributions that should have been made in any time period up to October 27, 2003. That does not mean, however, that Berley is entitled to summary judgment on all Holland's claims. Regardless of whether Holland knew or should have known that contributions were not being made in accordance with her understanding of the agreement of the parties after October 27, 2003, her claim as to that time period is timely, based on the filing date of this suit.

**IT IS THEREFORE ORDERED** that defendant's **Motion For Summary**

**Judgment** (document #17) is **granted in part and denied in part.**

The motion is **granted** as to Holland's claim for contributions that should have been made to her retirement account, but were not, for any time period up to October 27, 2003, and that portion of her claim is **dismissed.**

The motion is **denied** as to Holland's claim for contributions that should have been made to her retirement account, but were not, for any time period from October 27, 2003, to the present.

**IT IS SO ORDERED.**

                        /s/ Jimm Larry Hendren
                        **JIMM LARRY HENDREN**
                        **UNITED STATES DISTRICT JUDGE**